1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DERECK S. LEE,                          No.  2:19-cv-0603 DB

12              Plaintiff,

13       v.                                  ORDER

14   ANDREW SAUL, Commissioner of Social
     Security,[1]
15

16              Defendant.

17   _____

18       This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

20   Plaintiff's motion argues that the Administrative Law Judge erred at step two of the sequential

21   evaluation, reached a residual functional capacity determination that was not supported by

22   substantial evidence, and improperly rejected plaintiff's testimony.

23   ////

_____

24   [1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019.
25   See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019).
     Accordingly, Andrew Saul is substituted in as the defendant in this action.  See 42 U.S.C. §
26   405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding
     the Office of the Commissioner shall, in his official capacity, be the proper defendant").
27

28   [2] Both parties have previously consented to Magistrate Judge jurisdiction over this action
     pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 4 & 5.)

For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and this matter is remanded for further proceedings.

**PROCEDURAL BACKGROUND**

In July of 2015, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on June 5, 2014. (Transcript ("Tr.") at 18, 204-14.) Plaintiff's alleged impairments included disc degeneration disease, facet joint arthritis, disc herniations, lumbar spondylolysis, facet arapathy, synovial cysts, and Scheuermann's Disease.[3] (Id. at 244.) Plaintiff's application was denied initially, (id. at 106-10), and upon reconsideration. (Id. at 116-20.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on August 7, 2017. (Id. at 36-70.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 36-39.) In a decision issued on April 24, 2018, the ALJ found that plaintiff was not disabled. (Id. at 30.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since June 5, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spines and myofascial pain syndrome (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

////

////

---

[3] Scheuermann's disease "is a condition of hyperkyphosis that involves the vertebral bodies and discs of the spine identified by anterior wedging of greater than or equal to 5 degrees in 3 or more adjacent vertebral bodies."  https://www.ncbi.nlm.nih.gov/books/NBK499966/

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except sit for four hours; stand and walk for four hours; and must alternate positions for five minutes after every one-half hour and can remain on task.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born [in] 1978 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from June 5, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 20-29.)

On March 10, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's April 24, 2018 decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 8, 2019.  (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

////

3

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006) (quoting <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; <u>see also</u> <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following three principal claims: (1) the ALJ erred at step two of the sequential evaluation; (2) the ALJ's treatment of the plaintiff's subjective

////

4

1  testimony constituted error; and (3) the ALJ's residual functional capacity determination was

2  unsupported.[4]  (Pl.'s MSJ (ECF No. 12-1) at 15-30.[5])

3  **I.      Step Two Error**

4          Plaintiff argues that the ALJ erred at step two of the sequential evaluation by finding that

5  plaintiff's anxiety and depressive disorders were not severe mental impairments.  (Id. at 15-21.)

6  At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically

7  severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th

8  Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The Commissioner's regulations provide that

9  "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the

10  claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a) &

11  416.921(a).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," and

12  those abilities and aptitudes include:  (1) physical functions such as walking, standing, sitting,

13  lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying

14  out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

15  supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine

16  work setting.  20 C.F.R. §§ 404.1521(b) & 416.921(b).

17          The Supreme Court has recognized that the Commissioner's "severity regulation increases

18  the efficiency and reliability of the evaluation process by identifying at an early stage those

19  claimants whose medical impairments are so slight that it is unlikely they would be found to be

20  disabled even if their age, education, and experience were taken into account."  Yuckert, 482 U.S.

21  at 153.  However, the regulation must not be used to prematurely disqualify a claimant.  Id. at 158

22  (O'Connor, J., concurring).  "An impairment or combination of impairments can be found not

23  severe only if the evidence establishes a slight abnormality that has no more than a minimal effect

24  on an individual[']s ability to work."  Smolen, 80 F.3d at 1290 (internal quotation marks and

25  citation omitted).

26  _____

27  [4] The court has reordered plaintiff's claims for purposes of clarity and efficiency.

28  [5] Page number citations such as this one are to the page number reflected on the court's CM/ECF
system and not to page numbers assigned by the parties.

1    "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination

2    of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v.

3    Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see

4    also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two

5    burden where "none of the medical opinions included a finding of impairment, a diagnosis, or

6    objective test results").  "Step two, then, is 'a de minimis screening device [used] to dispose of

7    groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also

8    Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis

9    standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal.

10   Feb.11, 2008) (describing claimant's burden at step two as "low").

11          Moreover, where the ALJ determines the presence of a mental impairment at step two of

12   the sequential evaluation 20 C.F.R. § 404.1520a "requires those reviewing an application for

13   disability to follow a special psychiatric review technique." Keyser v. Commissioner Social Sec.

14   Admin., 648 F.3d 721, 725 (9th Cir. 2011).

15               Under the special-technique regulation, if the ALJ determines that a
                 mental impairment exists, he "must specify the symptoms, signs, and
16               laboratory findings that substantiate the presence of the
                 impairment(s) and document [his] findings."   [20 C.F.R.] §
17               404.1520a(b)(1).  The ALJ must also document "a specific finding
                 as to the degree of limitation in each of" the four areas of functional
18               limitation listed in § 404.1520a(c)(3). Id. § 404.1520a(e)(4).  In the
                 first three areas of functional limitations—(a) activities of daily
19               living, (b) social functioning, and (c) concentration, persistence, or
                 pace—the ALJ must rate the degree of limitation using "the
20               following five-point scale: None, mild, moderate, marked, and
                 extreme."   Id. § 404.1520a(c)(4).  The ALJ must rate the fourth
21               functional area—(d) episodes of decompensation—using "the
                 following four-point scale: None, one or two, three, four or more."
22               Id.  Next, the ALJ must determine if the mental impairment is severe,
                 and if so, whether it qualifies as a listed impairment.   Id. §
23               404.1520a(d).  If the mental impairment is severe but is not a listed
                 impairment, the ALJ must assess the claimant's RFC in light of how
24               the impairment constrains the claimant's work abilities.  See id. §
                 404.1520a(d)(3).  The regulation specifically provides that the ALJ
25               must document all of the special technique's steps.   Id. §
                 404.1520a(e)(4).
26

27   Patterson v. Commissioner of Social Security Administration, 846 F.3d 656, 659 (4th Cir. 2017).

28   ////

                                                  6

Here, the ALJ found that plaintiff's "anxiety and depressive disorders do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. at 21.) The ALJ went on to apply the special psychiatric review technique, finding that plaintiff's "medical determinable mental impairment causes no more than 'mild' limitation in any of the functional areas[.]" (Id. at 22.) The ALJ's findings, however, are belied by the evidence of record.

In this regard, in November of 2013, plaintiff was seen by Dr. Daniel Rockers, Ph.D., who conducted a psychological evaluation. (Id. at 337.) Dr. Rockers found "symptoms of anxiety sufficient for a diagnosis of panic attacks, and symptoms of depression sufficient for a diagnosis of major depressive disorder." (Id. at 339.) Dr. Rockers also found that plaintiff's current Global Assessment of Functioning ("GAF") score was 55.[6] (Id.)

On June 27, 2014, plaintiff was seen for a qualified medical evaluation by Dr. Kayvan Haddadan. (Id. at 325.) Dr. Haddadan opined that plaintiff was "totally temporarily disabled because of the pain and the possibility of marked-to-moderate depression." (Id. at 330.) On November 18, 2014, plaintiff was seen for an office visit and was given a refill of "Xanax for breakthrough anxiety" with instructions to return to discuss medication to "help control anxiety and depression." (Id. at 414.)

On October 16, 2015, plaintiff was examined by Les P. Kalman, M.D., Psy.D. (Id. at 904.) Dr. Kalman opined, in relevant part, that plaintiff's had "dysphoric mood related to medical conditions" and experienced "decreased ability to maintain attention, concentration and memory[.]" (Id. at 906.) On March 28, 2016, plaintiff's treating physician examined plaintiff and found "depressed mood, anxious." (Id. at 1149.)

---

[6] A Global Assessment of Functioning or "GAF" score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). However, "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Id.

1    In addition to the opinions of Drs. Rockers, Haddadan, and Kalman, "at the request of" the

2   Commissioner Drs. "Jennifer Duffy Ph.D. and Ida Hilliard M.D. reviewed the evidence in record"

3   with respect to plaintiff's mental impairment and found that plaintiff was "unable to consistently

4   maintain concentration, persistence or pace for complex tasks."  (Id. at 22.)  And plaintiff's

5   treating therapist submitted a letter on June 18, 2018, stating that "over the course of the last ten

6   years of our therapeutic relationship," plaintiff had exhibited numerous symptoms, including

7   "anxiety, depression[.]"[7]  (Id. at 9.)

8    As noted above, the ALJ's conclusion that the claimant lacks a medically severe

9   impairment or combination of impairments is valid only when that conclusion is "clearly

10  established by medical evidence."  Webb, 433 F.3d at 687.  On this record, the court cannot say

11  that it was clearly established by the medical evidence that plaintiff lacked a medically severe

12  mental impairment.  See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir.

13  2011) ("This is not the total absence of objective evidence of severe medical impairment that

14  would permit us to affirm a finding of no disability at step two."); Webb, 433 F.3d at 687

15  ("Although the medical record paints an incomplete picture of Webb's overall health during the

16  relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of

17  step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court

18  must determine whether the ALJ had substantial evidence to find that the medical evidence

19  clearly established that Ms. Russell did not have a medically severe impairment or combination of

20  impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a

21  finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of

22  establishing disability.").

23  ////

24

---

25  [7] Although this information was not before the ALJ, it was submitted to the Appeals Council which considered the evidence in denying review of the ALJ's decision.  (Tr. at 2.)  "[W]hen a

26  claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative

27  record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."  Brewes v. Commissioner of Social Sec. Admin.,

28  682 F.3d 1157, 1163 (9th Cir. 2012).

8

1    For the reasons stated above, the court cannot find that the ALJ's step two finding was

2    clearly established by medical evidence or was free from error.  Accordingly, the court finds that

3    plaintiff is entitled to summary judgment as to the claim that the ALJ erred at step two of the

4    sequential evaluation.

5    **II.    Plaintiff's Subjective Testimony**

6    The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's

7    credibility as follows:

> To determine whether a claimant's testimony regarding subjective
> pain or symptoms is credible, an ALJ must engage in a two-step
> analysis.  First, the ALJ must determine whether the claimant has
> presented objective medical evidence of an underlying impairment
> which could reasonably be expected to produce the pain or other
> symptoms alleged.  The claimant, however, need not show that her
> impairment could reasonably be expected to cause the severity of the
> symptom she has alleged; she need only show that it could
> reasonably have caused some degree of the symptom.  Thus, the ALJ
> may not reject subjective symptom testimony . . . simply because
> there is no showing that the impairment can reasonably produce the
> degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence
> of malingering, the ALJ can reject the claimant's testimony about the
> severity of her symptoms only by offering specific, clear and
> convincing reasons for doing so[.]

17   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

18   omitted).  "The clear and convincing standard is the most demanding required in Social Security

19   cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At

20   the same time, the ALJ is not required to believe every allegation of disabling pain, or else

21   disability benefits would be available for the asking[.]"  Molina v. Astrue, 674 F.3d 1104, 1112

22   (9th Cir. 2012).

23   "The ALJ must specifically identify what testimony is credible and what testimony

24   undermines the claimant's complaints."[8]  Valentine v. Commissioner Social Sec. Admin., 574

---

[8] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect.  "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness."  Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR

9

F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id.

Here, the ALJ recounted plaintiff's testimony as follows:

> The claimant is a forty-year-old male with a high school education. He alleges he suffers from "degenerative disc disease", "facet joint arthritis", "disc herniations", "left protractal L5/S1 HMP", "lumbar spondylolysis L4/L5 thru L5/SI", "facet arthropathy", "synovial cysts L4 L5 S1", and "Scheurermann's Disease" which significantly affect his ability to perform work related activities.

> The claimant completed an Exertion Questionnaire form dated August 13, 2015, wherein he reported spending an average day performing very light household chores which causes a mild increase in pain.  He is able to walk a half hour or half mile.  He is limited in his ability to climb stairs, lift (up to fifteen pounds), and sleep. However, he is able to load the dishwasher, wash laundry, dust, wipe off counter tops, and drive up to two hours.  In addition, he is able to work in the yard several times a month.

> The claimant appeared and testified at the hearing, he was working part time for a good friend who worked around his physical complaints and limitations.  The claimant reported he was limited in his ability to sit for more than an hour, including while driving, and could walk one to two hours.  He has weekly flare-ups which vary in intensity and duration from one day to one week.  He is no longer able to go on vacations or spend time with family or friends as he fears he will fall or further injure himself.  He recently had a medication adjustment and is taking the highest dose of medication. He uses medications, ice, and heat to manage his symptoms.  He no longer has radiating pain into his lower extremities.  However, he is limited in his ability to bend and stoop.

(Tr. at 24-25.)

////

_____

16-3p) (alterations omitted).

Thereafter, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision."[9]  (Id. at 25.)

One of the reasons offered by the ALJ for discrediting plaintiff's testimony was that when "offered a higher level of care at times, [plaintiff] declined these recommendations."  (Id.) "[C]ase law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."  Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (ALJ may consider "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment").

Moreover, this finding is supported by substantial evidence in the record.  In this regard, a March 2, 2015 office visit reflects that plaintiff discontinued "gabapentin because [he] does not feel any more nerve pain."  (Tr. at 400.)  On August 20, 2015, plaintiff was "[o]ffered [a] pain program," but "declined."  (Id. at 928.)  A June 15, 2016 treatment note reflects that plaintiff "refuses to exercise[] or do physical therapy."[10]  (Id. at 1181.)

The ALJ provided a clear and convincing reason for rejecting plaintiff's testimony that was supported by substantial evidence in the record.  Plaintiff, therefore, is not entitled to

---

[9] "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination" before "identify[ing] what parts of the claimant's testimony were not credible and why."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014).  "The use of this generic language is not itself reversible error . . . but it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC.  By rejecting a claimant's subjective symptoms 'to the extent they are inconsistent with the above residual functional capacity assessment,' the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do."  Trevizo, 871 F.3d at 679 n.6.

[10] The same note appears to reflect that plaintiff's treating physician explained to plaintiff that plaintiff's "MRI findings" did not "necessarily correlate with the severity of pain."  (Tr. at 1181.)

1    summary judgment on the claim that the ALJ's treatment of plaintiff's subjective testimony

2    constituted error.

3    **III.      RFC Error**

4          Plaintiff argues that the ALJ's Residual Functional Capacity ("RFC") finding was not

5    supported by substantial evidence in the record.  (Pl.'s MSJ (ECF No. 12-1) at 22-24.)  A

6    claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R.

7    § 404.1545(a); 20 C.F.R. § 416.945(1); <u>see</u> <u>also</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, n.5 (9th Cir.

8    1989) ("A claimant's residual functional capacity is what he can still do despite his physical,

9    mental, nonexertional, and other limitations.").  In conducting an RFC assessment, the ALJ must

10   consider the combined effects of an applicant's medically determinable impairments on the

11   applicant's ability to perform sustainable work.  42 U.S.C. § 423(d)(2)(B); <u>Macri v. Chater</u>, 93

12   F.3d 540, 545 (9th Cir. 1996).  The ALJ must consider all of the relevant medical opinions as

13   well as the combined effects of all of the plaintiff's impairments, even those that are not "severe."

14   20 C.F.R. §§ 404.1545(a); 416.945(a); <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th Cir. 2003).

15   "[A]n RFC that fails to take into account a claimant's limitations is defective."  <u>Valentine v.</u>

16   <u>Commissioner Social Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ must determine a

17   claimant's limitations on the basis of "all relevant evidence in the record."  <u>Robbins v. Soc. Sec.</u>

18   <u>Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006).

19         Here, defendant argues that this claim of error is "duplicative" of plaintiff's other claims

20   because, in part, "the ALJ's findings regarding Plaintiff's mental abilities were well supported."

21   (Def.'s MSJ (ECF No. 13) at 20.)  The court, however, has found that the ALJ's finding that

22   plaintiff lacked a severe mental impairment was erroneous.  Moreover, defendant fails to cite to

23   an example of the ALJ's consideration of plaintiff's mental impairment in determining the RFC—

24   nor could the court find such an example.

25         Accordingly, plaintiff's is also entitled to summary judgment on the claim that the ALJ's

26   RFC determination was erroneous.

27   ////

28   ////

**CONCLUSION**

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, upon review of the record and the nature of the ALJ's errors, the court cannot find that further proceedings would serve no useful purpose. Thus, this matter must be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 13) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

////

////

////

13

1       4.  This matter is remanded for further proceedings consistent with this order; and

2       5.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

3  Dated:  September 28, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\lee0603.ord

14